## BRUCE ALLARD *v.* LIBERTY OIL EQUIPMENT COMPANY, INC.
### (SC 16154)

Borden, Norcott, Katz, Sullivan and Vertefeuille, Js.

Argued May 30—officially released July 25, 2000

*John B. Farley*, with whom, on the brief, were *James V. Somers, Michael S. Taylor* and *Jodie R. Small*, for the appellant (defendant).

*Michael Brodinsky*, for the appellee (third party defendant).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether a defendant sued in negligence may apportion liability to a product seller against whom the defendant alleges, in its apportionment complaint, only a theory of negligence. The defendant, Liberty Oil Equipment Company, Inc. (Liberty Oil),[1] appeals[2] from the judgment of the

---

[1] The plaintiff's amended complaint contained a products liability count against another defendant, Baumert Sales Co., Inc., which is not involved in this appeal.

[2] Liberty Oil appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

trial court striking its apportionment complaint against the third party defendant, Boston Steel and Manufacturing Co. (Boston Steel). Liberty Oil claims that the trial court improperly struck its apportionment complaint because, although Boston Steel was alleged to be a product seller with respect to the particular item in question in the case, Liberty Oil confined its apportionment allegations against Boston Steel to claims of negligence. We affirm the judgment of the trial court.

The plaintiff, Bruce Allard, brought the action underlying this case against Liberty Oil in negligence. Liberty Oil filed a substitute apportionment complaint against Boston Steel. The trial court granted Boston Steel's motion to strike the substitute apportionment complaint, and rendered judgment accordingly.

The procedural history is undisputed. In June, 1996, Allard brought the underlying action in this case. In his original complaint, Allard alleged that, on February 27, 1995, while employed by Viking Oil, Inc.,[3] he brought his oil truck to Liberty Oil for servicing and, while in Liberty Oil's service area, he was descending certain steps of a ladder on his truck when he fell, landing on a wooden hand truck, causing him to suffer severe injuries. Allard alleged that Liberty Oil was negligent in failing to maintain its service area in a safe condition, in failing to prohibit customers from entering the service area, and in failing to take reasonable measures to prevent customers from entering the dangerous service area. Liberty Oil filed its first apportionment complaint against Boston Steel alleging that a portion of its liability to Allard, if any, should be apportioned to Boston Steel because the oil truck or a portion of the oil truck from which Allard allegedly had fallen was "designed, installed, manufactured, distributed, or sold by" Boston Steel, and was defective and unreasonably dangerous.

---

[3] Viking Oil, Inc., as the plaintiff's employer, intervened as a plaintiff.

The trial court, *Lavine, J.*, granted Boston Steel's motion to strike this first apportionment complaint. Liberty Oil then filed a substitute apportionment complaint (apportionment complaint), which is the focus of this appeal.

In the apportionment complaint, Liberty Oil alleged that the portion of the oil truck from which Allard allegedly had fallen, including the tank and ladder, was "designed, manufactured, installed, distributed, or sold by" Boston Steel. Liberty Oil also alleged that Allard had alleged that his injuries were the result of Liberty Oil's negligence, and that, if Allard had suffered any injuries, "then said injuries and damages were proximately caused by the negligence and carelessness of Boston Steel . . . ."[4] Accordingly, Liberty Oil sought "an apportionment of liability against Boston Steel for the percentage of its liability causing the plaintiff's alleged injuries and damages." Boston Steel moved to strike the apportionment complaint on the ground that, despite the allegations of negligence, the apportionment complaint "alleges a products liability claim, not a negligence claim." The trial court, *Lavine, J.*, granted the motion to strike. Subsequently, the trial court, *Maloney, J.*, granted Liberty Oil's motion for judgment on the apportionment complaint.[5] This appeal followed.

[4] The specific acts of negligence on the part of Boston Steel alleged by Liberty Oil included: (1) failing to act reasonably; (2) negligently designing the tank and ladder; (3) negligently manufacturing the tank and ladder; (4) negligently installing the tank and ladder; (5) negligently failing to provide adequate warnings concerning the tank and ladder; and (6) failing to make reasonable use of its senses and faculties.

[5] Meanwhile, Allard has filed an amended complaint reasserting his allegations of negligence against Liberty Oil, and adding a count of product liability against Liberty Oil. In this amended complaint, Allard also has alleged product liability against Baumert Sales Co., Inc., and Boston Steel. Liberty Oil does not claim apportionment against Boston Steel with respect to Allard's count alleging product liability by Liberty Oil; its apportionment claim is confined to Allard's allegations against it claiming negligence.

In addition, Liberty Oil also has filed a third party complaint against Boston Steel claiming indemnification and contribution. Liberty Oil's third party complaint also is not involved in this appeal.

Liberty Oil claims that the trial court improperly struck its apportionment complaint. Liberty Oil's argument is simple and straightforward: it has been sued in negligence; General Statutes § 52-572h permits apportionment of negligence claims; its apportionment complaint seeks to apportion only its liability, if any, based on negligence; and, therefore, its apportionment complaint was proper. Despite this apparent simplicity and straightforwardness, however, we disagree. We conclude that the trial court properly struck the apportionment complaint.

It is undisputed that Liberty Oil filed its apportionment complaint pursuant to General Statutes § 52-102b (a),[6] which provides in pertinent part: "A defendant in

---

[6] General Statutes § 52-102b provides: "Addition of person as defendant for apportionment of liability purposes. (a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. . . ." Indeed, § 52-102b is "the exclusive means by which a defendant may add a person who is or may be liable pursuant to section

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallocated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

52-572h for a proportionate share of the plaintiff's damages as a party to the action." General Statutes § 52-102b (f).

It is also undisputed that, to the extent that Allard's complaint seeks damages from Liberty Oil based on negligence, that complaint is a "civil action to which section 52-572h applies"; General Statutes § 52-102b (a); because of the provisions of § 52-572h (c): "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." General Statutes § 52-572h (c), as amended by No. 99-69, § 1 (c), of the 1999 Public Acts (P.A. 99-69).[7] Put another way, a "civil action to which

[7] Public Act 99-69, entitled "An Act Concerning Apportionment of Liability between Negligent and Intentional Tortfeasors," provides: "Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. Section 52-572h of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or [his] *the person's* legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the

combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for [his] *such party's* proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount

## section 52-572h applies," within the meaning of § 52-102b, means a civil action based on negligence.

which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of [his] *such party's* proportionate share of the claim.

"(i) This section shall not limit or impair any right of subrogation arising from any other relationship.

"(j) This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of [his] *such* indemnity obligation.

"(k) This section shall not apply to breaches of trust or of other fiduciary obligation.

"(l) The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished.

"(m) The family car doctrine shall not be applied to impute contributory or comparative negligence pursuant to this section to the owner of any motor vehicle or motor boat.

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section.

"*(o) Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for*

In addition, Boston Steel does not dispute that, if Liberty Oil's apportionment complaint were based on allegations of negligence by Boston Steel that did not in any way involve Boston Steel's conduct as a product seller, within the meaning of our statutes governing product liability; General Statutes §§ 52-572m through 52-572q;[8] the apportionment complaint would be

negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556.

"Sec. 2. This act shall take effect from its passage and shall be applicable to any civil action pending on or filed on or after August 11, 1998."

Bracketed material indicates text that was deleted from § 52-572h by P.A. 99-69. Italicized material indicates text that was added to § 52-572h by P.A. 99-69.

[8] General Statutes § 52-572m provides: "Product liability actions. Definitions. As used in this section and sections 52-240a, 52-240b, 52-572n to 52-572q, inclusive, and 52-577a:

"(a) 'Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term 'product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

"(b) 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

"(c) 'Claimant' means a person asserting a product liability claim for damages incurred by the claimant or one for whom the claimant is acting in a representative capacity.

"(d) 'Harm' includes damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, 'harm' does not include commercial loss.

"(e) 'Manufacturer' includes product sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or compo-

## proper. That is because, in that instance, the provisions

nent part of a product prior to its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer."

General Statutes § 52-572n provides: "Product liability claims. (a) A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

"(b) A claim may be asserted successfully under said sections notwithstanding the claimant did not buy the product from or enter into any contractual relationship with the product seller.

"(c) As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."

General Statutes § 52-572o provides: "Comparative responsibility. Award of damages. Action for contribution. (a) In any claim under sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.

"(e) If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within one year

of § 52-572h would plainly apply. See General Statutes § 52-572h (b) and (c), as amended by P.A. 99-69, as set forth in footnote 7 of this opinion.

The question raised by the present case, however, is whether § 52-572h, as amended by P.A. 99-69, permits an apportionment complaint that seeks to limit its allegations against a product seller, as defined by our product liability statutes, to allegations of negligence. We conclude that it does not, because of the provisions of our product liability statutes, as we have interpreted

after payment, or (2) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an action for contribution."

General Statutes § 52-572p provides: "Limitation of liability of product seller. (a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; or (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

"(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller."

General Statutes § 52-572q provides: "Liability of product seller due to lack of adequate warnings or instructions. (a) A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided.

"(b) In determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.

"(c) In claims based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.

"(d) A product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against the potential harm."

them, and because of the specific provisions of § 52-572h, as contained in P.A. 99-69, § 1 (o).

First, the allegations of the apportionment complaint are that Boston Steel "designed, manufactured, installed, distributed, or sold" the portion of the oil truck from which the plaintiff allegedly fell. These allegations are classic allegations of product liability. See, e.g., General Statutes § 52-572m (a) (" '[p]roduct seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption"); see footnote 8 of this opinion for the full text of § 52-572m. It cannot be disputed that Boston Steel is, under the allegations of the apportionment complaint, a " 'product seller' " within the meaning of § 52-572m. See also General Statutes § 52-572m (b) (" '[p]roduct liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product").

Second, under § 52-572m (b), a " '[p]roduct liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent . . . ." Thus, despite the limitations by Liberty Oil of its allegations of misconduct to allegations of negligence, the allegations of the apportionment

complaint constitute a " '[p]roduct liability claim' " within the meaning of § 52-572m (b).

Section 52-572n (a) provides: "A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." See footnote 8 of this opinion for the full text of § 52-572n. It is now beyond dispute that this provision "provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." *Winslow* v. *Lewis-Shepard, Inc.*, 212 Conn. 462, 463, 562 A.2d 517 (1989) (plaintiff cannot avoid product liability statute of limitations by pleading product liability claim in common-law terms); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 571–72, 512 A.2d 893 (1986) (common-law claim based on product liability barred by § 52-572n [a]); compare *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 298–99, 627 A.2d 1288 (1993) (loss of consortium claim not barred by Product Liability Act); *Paul* v. *McPhee Electrical Contractors*, 46 Conn. App. 18, 21, 698 A.2d 354 (1997) (no apportionment claim permitted based on allegations of product liability).

Liberty Oil cannot, therefore, convert its apportionment claim against Boston Steel into something other than a product liability claim simply by alleging only negligent misconduct. Put another way, we fail to see why, if a claimant may *not* avoid the exclusivity provision of § 52-572n (a) by casting his pleading in common-law terms, a defendant seeking to bring in an apportionment defendant *should* be permitted to do so.

In addition, the provisions of § 52-572h, as amended by P.A. 99-69, lead us to the same conclusion. We first note that P.A. 99-69 governs this action. Section 2 of

P.A. 99-69 provides: "This act shall take effect from its passage and shall be applicable to any civil action pending or filed on or after August 11, 1998." The present case was pending on August 11, 1998.

Public Act 99-69 amended § 52-572h by adding subsection (o), which provides: "Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556."

The general effect of P.A. 99-69, § 1 (o), was to make clear that the apportionment principles of § 52-572h do not apply where the purported apportionment complaint rests "on any basis other than negligence," and that these other bases include, without limitation, "intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute . . . ."[9] The legislative history of P.A. 99-69 makes clear that its principal purpose was to overrule legislatively a portion of this court's decision in *Bhinder* v. *Sun Co.*, 246 Conn. 223, 717 A.2d 202 (1998). See, e.g., 42 S. Proc., Pt. 6, 1999 Sess., pp. 1797–98, remarks

---

[9] There is, however, an exception to the bar to apportionment for actions created by statute, namely, actions created by statute that are "based on negligence," such as, but not limited to, "an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556." Public Act 99-69, § 1 (o).

of Senator Donald E. Williams, Jr.;[10] 42 H.R. Proc., Pt. 6, 1999 Sess., p. 1916, remarks of Representative Michael P. Lawlor;[11] id., pp. 1918–19;[12] see also generally Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1999 Sess., pp. 1271–74, 1310–29, 1340–46, 1355–58, 1362, 1365, 1418–20, 1426–31; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1999 Sess., pp. 1538–50.

In *Bhinder* v. *Sun Co.*, supra, 246 Conn. 225, the plaintiff brought a wrongful death action against the defendant based on negligence. The defendant sought to apportion its liability to an apportionment defendant

---

[10] Senator Williams stated during the legislative debate in the Senate: "The intent of this legislation is to restore the state of the laws as it existed prior to a Connecticut supreme court decision in [*Bhinder* v. *Sun Co.*, supra, 246 Conn. 223]. . . . It simply allows apportionment of liability and damages only in actions based on negligence. So, essentially this would not allow such apportionment between a negligent and an intentional tortfeasor. And through that, Madam President, it would restore us to the state of the law that existed through tort reform legislation in the 1980's, and I move adoption." 42 S. Proc., supra, p. 1797–98.

[11] During the legislative debate in the House of Representatives, Representative Lawlor stated: "This bill intends to correct what many people interpret to be a wrongful decision by our state Supreme Court made last August. . . . [T]his bill intends to clarify what everyone had understood the law to be prior to a decision of our state Supreme Court last August." 42 H.R. Proc. supra, p. 1916.

[12] Representative Lawlor further stated in the legislative debate in the House of Representatives: "[I]f I could just state for legislative intent so that there's no mistake about what the General Assembly intends in proposing and hopefully passing this bill, it's the intent of this legislation to restore the state of the law as it existed prior to the state Supreme Court decision last August 11th in [*Bhinder* v. *Sun Co.*, supra, 246 Conn. 223]. . . . The bill simply allows apportionment of liability and damages only in actions based on negligence. And let me emphasize Madam Speaker, there was a great deal of concern among the various parties and interests who are represented here at the legislature as to whether or not in some way this bill would do more than go back to the way the law was prior to last August's Supreme Court decision. It's, based on the testimony before our committee and the discussions that have happened prior [to] today, it's very clear that the only intent here is to put the law back where everyone understood it to be last year. That's the only purpose of this bill." 42 H.R. Proc., supra, pp. 1918–19.

whose conduct was not negligent, but intentional, reckless, wilful and wanton. Id., 229. This court held that: (1) as a matter of statutory interpretation, "the plain language of § 52-572h provides that only negligent persons may be cited in by the defendant for apportionment of liability purposes"; id., 230; and (2) nonetheless, "as a matter of common law, we should extend the policy of apportionment to permit a defendant in a negligence action to cite in as an apportionment defendant a party whose conduct is alleged to be reckless, wilful, and wanton." Id., 234. *Bhinder* was decided on August 11, 1998. Id., 224.

The legislative response to *Bhinder* was prompt. In the next legislative session, the legislature amended § 52-572h through P.A. 99-69 by adding subsection (o), which was effective as to all actions pending on or filed after the date of the *Bhinder* decision. In doing so, it accomplished three purposes. First, the legislature reaffirmed that, as a matter of statutory interpretation, only negligent persons may be cited in as apportionment defendants pursuant to the statute. Thus, in this respect, P.A. 99-69 endorsed the corresponding statutory interpretation part of *Bhinder*. Second, the legislature made clear its intent that apportionment principles would not apply where the basis of liability of the purported apportionment defendant was based on conduct "other than negligence," including but not limited to intentional, wanton or reckless misconduct, strict liability, and liability pursuant to any cause of action created by statute. Thus, in this respect, the legislature made clear its intent to overrule the common-law portion of *Bhinder*. It went beyond the facts of *Bhinder*, however, which had been limited to allegations of common-law intentional, wanton and reckless misconduct. The legislature also included a specific bar to apportionment principles where the apportionment defendant's purported misconduct was based on strict liability or on

a statutory cause of action. Third, the legislature made clear its intent that, despite the specific bar to apportionment regarding statutory actions, liability *may* be apportioned among parties liable for negligence in statutory actions based on *negligence,* such as wrongful death actions and actions for injuries caused by state-owned motor vehicles. Thus, the legislature in effect anticipated, and made clear its rejection of, a potential argument that statutory actions should not be considered to be actions "based on negligence," which is ordinarily understood to be a common-law, and not a statutory, concept, and also made clear that, where the statutory action in question is based on allegations of negligence, apportionment principles *would* apply.

It is significant that actions based on "strict liability" are among the types of actions that the legislature specifically noted as not affording apportionment. Product liability is simply a form of strict liability. See *Potter* v. *Chicago Pneumatic Tool Co.,* 241 Conn. 199, 210–11, 694 A.2d 1319 (1997). In fact, General Statutes § 52-572*l*, which provides that "[i]n causes of action based on strict tort liability," contributory and comparative negligence shall not be a bar to recovery, contemplates that strict liability and product liability are forms of the same tort. Section 52-572*l* further provides that "[n]othing in this section shall be construed as barring the defense of misuse of the product or the defense of knowingly using the product in a defective condition in an action based on strict tort liability."

Thus, it would be inconsistent with the provisions of § 52-572h, as amended by P.A. 99-69, § 1 (o), to permit a defendant sued in negligence to claim apportionment against a product seller whose alleged misconduct tracks that of product liability, solely because the party seeking apportionment chooses to limits its allegations to those sounding in negligence. Indeed, the specific bar to apportionment to a party based on strict liability

is most plausibly read as a legislative affirmation of the Appellate Court's decision, referred to previously, in *Paul* v. *McPhee Electrical Contractors*, supra, 46 Conn. App. 21, that a product liability claim cannot be the basis of apportionment under § 52-572h. See *State* v. *Dabkowski*, 199 Conn. 193, 201, 506 A.2d 118 (1986) (legislature may be presumed to know state of law governing subject matter of legislation).

Liberty Oil argues that P.A. 99-69, § 1 (o), supports its position because of its provision that apportionment is allowed between "parties liable for negligence in any cause of action created by statute based on negligence . . . ." Thus, Liberty Oil contends, "[g]iven that the . . . apportionment claim alleges negligence in relation to a defective product, the apportionment complaint involves a statutory cause of action based upon negligence, and P.A. 99-69 does not prohibit but instead permits apportionment here." Implicit in this argument is the notion that a product liability claim is the kind of "cause of action created by statute based on negligence" that P.A. 99-69, § 1 (o), envisions. We disagree.

First, that interpretation would conflict with the specific bar to apportionment for actions based on "strict liability," of which product liability, albeit now statutory, is simply a form. The specific reference barring apportionment involving actions based on strict liability trumps the more general notion implicit in Liberty Oil's contention.

Second, the statutory actions based on negligence given as examples, namely, wrongful death and injuries caused by state-owned vehicles, are different in their nature from product liability claims. The theory behind the statutory limitation of apportionment claims to those involving negligence is that, in such a case, both the underlying claim of the plaintiff and the apportionment claim of the defendant are in relative pari materia,

in that they both involve negligent conduct. The statutory actions based on negligence given as examples are consistent with that theory because they rest on the same notions of fault embodied in nonstatutory negligence actions. Product liability claims, however, do not rest on notions of fault. They rest on more generalized notions of allocation of the plaintiff's loss to the product seller who puts a defective product into the stream of commerce, and therefore ordinarily is able to spread the loss by price adjustments. See *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 194, 700 A.2d 38 (1997). Thus, it would be inconsistent with the theory of the apportionment statute to read it as Liberty Oil proposes.

The judgment is affirmed.

In this opinion the other justices concurred.