******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MALISA COSTANZO, ADMINISTRATRIX (ESTATE OF ISABELLA R. COSTANZO), ET AL. *v.* TOWN OF PLAINFIELD ET AL.
## (AC 42765)

DiPentima, C. J., and Alvord and Keller, Js.*

### *Syllabus*

The plaintiff mother, as the administratrix of her daughter's estate, sought
to recover damages in connection with her daughter's drowning death
in an aboveground pool from the defendants, the town of Plainfield and
two town employees, for their failure to inspect the pool to ensure that
mandated safety measures had been installed. The plaintiff was a tenant
of the property where the accident occurred. The pool did not have a
self-closing or self latching gate, or a pool alarm, which were required
as part of the state building code. The defendants filed a notice of intent
to seek apportionment pursuant to statute (§ 52-102b), as to the property
owners for their alleged negligence in failing to ensure that the pool
met all required safety requirements. The defendants also filed an appor-
tionment complaint, as to the former tenants of the property, alleging
that they were negligent in failing to notify the defendants that the pool
had been constructed and that an inspection was needed. The plaintiff
thereafter filed an objection to the defendants' notice of intent to seek
apportionment as to the property owners, and an objection to the defen-
dants' apportionment complaint against the former tenants, on the
ground that the plaintiff's cause of action in the revised complaint was
not grounded in negligence but, rather, an intentional or reckless tort
pursuant to the municipal liability statute (§ 52-557n (b) (8)), and, there-
fore, the apportionment statute was inapplicable. The trial court sus-
tained the plaintiff's objections. On appeal, the defendants claimed that
the trial court erred in sustaining the plaintiff's objections on the basis
that the plaintiff's revised complaint implicated both exceptions to
municipal immunity contained in § 52-557n (b) (8) and that the first
exception employed a negligence standard, not a recklessness standard,
thus allowing the defendants to seek apportionment. *Held* that the trial
court erred in sustaining the plaintiff's objections to the defendants'
efforts to seek apportionment: the plaintiff alleged in her complaint that
at all relevant times the town's employees acted within the scope of
their employment with the town, those employees and thus, the town,
knew that a pool had been built at the property and had actual notice
that the construction of the pool was completed in violation of the
applicable laws and/or that the pool constituted a hazard to health or
safety, thereby alleging that the town employees, with actual knowledge
of a violation of a law and/or the existence of a hazardous condition,
failed to conduct an inspection, in accordance with the first exception
of § 52-557n (b) (8), which contains a negligence standard, and unlike
the second exception of § 52-557n (b) (8), recklessness is not an element
of the actual notice exception; as a result of the plaintiff's allegations
of a claim of negligence on the part of the municipal actors, the defen-
dants can seek apportionment as to the negligence of the former tenants
and property owners pursuant to the apportionment statute (§ 52-
572h (o)).

Argued June 17—officially released October 13, 2020

### *Procedural History*

Action to recover damages for, inter alia, reckless-
ness, brought to the Superior Court in the judicial dis-
trict of Windham, where the defendants filed an appor-
tionment complaint and a notice of intent to seek
apportionment; thereafter, the trial court, *Cole-Chu, J.*,
sustained the plaintiffs' objections to the defendants'
apportionment complaint and the notice of intent to

seek apportionment, and dismissed the notice and the apportionment complaint, and the defendants appealed to this court. *Reversed*; *further proceedings*.

*Ryan J. McKone*, with whom, on the brief, was *James G. Williams*, for the appellants (defendants).

*Stephen M. Reck*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, C. J. This case arises out of the tragic drowning of a young child in an aboveground swimming pool. The defendants, the town of Plainfield (town), Robert Kerr and D. Kyle Collins, Jr., appeal from the trial court's orders sustaining the objections of the plaintiff Malisa Costanzo, as administratrix of the estate of the decedent, Isabella R. Costanzo,[1] to the defendants' efforts to commence apportionment actions against the owners of the property where the pool was located and their former tenants who had the pool constructed. We agree with the defendants that the court improperly sustained the plaintiff's objections, and therefore we reverse the judgment of the trial court and remand the case for further proceedings.

The plaintiff alleged the following facts in her revised complaint dated August 28, 2018. The decedent drowned in an aboveground pool located at 86 Gelbas Road in Plainfield on June 22, 2016. At all relevant times, the town employed Kerr as a licensed building official and Collins as a licensed assistant building manager. One of their employment duties was to inspect all pools constructed in the town to ensure compliance with the State Building Code. See, e.g., General Statutes § 29-261.[2] The defendants issued a building permit for this aboveground swimming pool on July 25, 2013; however, Kerr and Collins, in violation of General Statutes § 29-265a,[3] issued that permit without having determined if a pool alarm had been installed. The plaintiff further alleged that the State Building Code[4] required the installation of a self-closing and self latching gate for all new pools and that Kerr and Collins had failed to ensure the installation of such a gate prior to issuing the building permit. The purpose of these safety features was to prevent children from drowning.

The plaintiff further alleged that Kerr and Collins were aware of these requirements and that they knew, or should have known, that an inspection of new pools was necessary to ensure compliance with these safety requirements. Finally, the plaintiff alleged that neither Kerr nor Collins had inspected or attempted to inspect the property to ensure that a pool alarm and a self-closing and self latching gate had been installed.

On July 27, 2018, prior to the filing of the revised complaint, the defendants moved for an order directing the plaintiff's counsel to provide a copy of the release agreement between the plaintiff and the owners of 86 Gelbas Road, Jenna Prink and Bruce Prink (Prinks).[5] The court, *Auger*, *J.*, granted the defendants' motion on August 23, 2018.

On October 19, 2018, the defendants filed a notice of their intent to claim that the negligence of the Prinks was a proximate cause of the injuries claimed in the plaintiff's action against the defendants. See General

Statutes § 52-102b (c).[6] Specifically, the defendants maintained that, as the owners of the property, the Prinks bore the responsibility for ensuring compliance with any requirements of the State Building Code, and that the Prinks had failed (1) to schedule an inspection of the pool by the defendants, (2) to obtain a certificate of occupancy for the pool and (3) to prevent their tenants from using the pool without obtaining a certificate of occupancy. The defendants further noted that the plaintiff had rented the property in November, 2014, and that the Prinks knew that four minor children would be living on the property. Finally, the defendants set forth the instances of the Prinks' negligence, including the failure to notify the town of the construction of the pool, the failure to seek an inspection, the failure to obtain a certificate of occupancy and the failure to warn the plaintiff of these omissions. Finally, the defendants contended that the Prinks could be liable for a proportionate share of the damages alleged in the plaintiff's complaint.

A few days later, the defendants filed an apportionment complaint, pursuant to General Statutes § 52-102b,[7] against Eric Guerin and Merissa Guerin (Guerins), former tenants of the Prinks who occupied the property in 2013 at the time the pool was built. In this one count apportionment complaint, the defendants alleged that the Guerins had prepared and submitted the application for the construction of the aboveground pool to the town. The defendants further claimed that the Guerins specifically were advised that the pool was required to have a self-closing and self latching gate, that an inspection was necessary at the completion of the construction and that Eric Guerin had submitted an affidavit "wherein he attested that he would install a [pool alarm]." The defendants alleged that the Guerins failed to notify them that the pool had been constructed and thus that an inspection was needed. The defendants alleged that these actions amounted to negligence and, additionally, the Guerins negligently failed to obtain a certificate of occupancy for the aboveground pool and failed to notify the Prinks that (1) the aboveground pool did not comply with the requirements of the building code, (2) the town and its officials had not been notified of its construction or the need for an inspection and (3) there was no certificate of occupancy. In conclusion, the defendants claimed that the Guerins could be liable for a proportionate share of the damages alleged in the plaintiff's complaint.

On October 22, 2018, the plaintiff filed an objection to the defendants' notice of intent to seek apportionment as to the Prinks. The plaintiff argued that her complaint set forth a statutory cause of action pursuant to General Statutes § 52-572n (b) (8) alleging recklessness, and that the apportionment statute, General Statutes § 52-572h (o), applied only to claims of negligence. On October 25, 2018, the plaintiff filed a similar objec-

tion to the defendants' apportionment complaint directed against the Guerins.

The court, *Cole-Chu, J.*, held a hearing on November 19, 2018. At the outset, it noted that the objection to the apportionment complaint "could reasonably be construed as a motion to strike." In his argument, the plaintiff's counsel stated that he had not pleaded a negligence cause of action in the revised complaint but rather an intentional or reckless tort pursuant to General Statutes § 52-557n (b) (8), and, as a result, the apportionment statute was inapplicable. He also indicated that the complaint was based on the second exception to municipal immunity contained in § 52-557n (b) (8)[8] with respect to property inspections. The defendants' counsel took the position that the complaint alleged negligence, and not recklessness; he acknowledged that claims of recklessness are not subject to apportionment.

On March 19, 2019, the court issued an order sustaining the plaintiff's objection to the defendants' notice of intent to pursue apportionment as to the Prinks. Specifically, it agreed with the plaintiff's contention that the complaint did not allege negligence such that the apportionment statute did not apply. The court stated that, "[i]f the defendants are found liable to the [plaintiff] on the revised complaint, it will be for reckless disregard for health and safety under all relevant [alleged] circumstances, not for negligence." (Internal quotation marks omitted.) In a separate order, the court dismissed the defendant's notice to seek apportionment, stating that, in sustaining the plaintiff's objection, it had essentially held "that it has no subject matter jurisdiction over the proceedings the defendants attempted . . . to set in motion."

The court also sustained the plaintiff's objection to the apportionment complaint filed against the Guerins. It again concluded that the plaintiff had alleged recklessness against the defendants and that therefore the apportionment statute was inapplicable. The court also issued a separate order dismissing the apportionment complaint against the Guerins on the basis of the lack of subject matter jurisdiction.[9] This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendants claim that the trial court erred in precluding their efforts to seek apportionment. Specifically, they argue that the plaintiff's revised complaint implicated both exceptions to municipal immunity contained in § 52-557n (b) (8) and that the first exception employs a negligence, not recklessness standard. As a result, they argue, apportionment is not prohibited pursuant to § 52-572h (o). The defendants further contend that the cause of action recognized in § 52-557n (b) (8) is not excluded from apportionment pursuant to § 52-102b. We agree with the defendants that the plaintiff's revised complaint sets forth allegations that fall within the first exception of § 52-557n

(b) (8) and that that exception contains a negligence standard. The trial court erred in sustaining the plaintiff's objections to the defendants' efforts to seek apportionment.

In order to resolve this appeal, we must review the relevant statutes and legal principles regarding municipal liability and apportionment, as they apply to the allegations contained in the plaintiff's revised complaint. "As a matter of Connecticut's common law, the general rule . . . is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." (Internal quotation marks omitted.) *Grady* v. *Sommers*, 294 Conn. 324, 334, 984 A.2d 684 (2009); see also *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003). "The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that [e]xcept as otherwise provided by law, *a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties* . . . . Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Emphasis added; internal quotation marks omitted.) *Borelli* v. *Renaldi*,      Conn.      ,      ,      A.3d      (2020); see also *Northrup* v. *Witkowski*, 332 Conn. 158, 167–68, 210 A.3d 29 (2019); *Ventura* v. *East Haven*, 330 Conn. 613, 629, 199 A.3d 1 (2019). In other words, "the statute provides that municipalities shall be liable for harm caused by ministerial acts in subsection (a) (1) (A) but shall not be liable for harm caused by discretionary acts in subsection (a) (2) (B)." *Ugrin* v. *Cheshire*, 307 Conn. 364, 381, 54 A.3d 532 (2012).[10]

Subsection (b) of § 52-557n defines additional circumstances in which a municipality, or an employee of that municipality, is not subject to liability. Id., 381. Stated differently, "[s]ubsection (a) [of § 52-557n] sets forth general principles of municipal liability and immunity, while subsection (b) sets forth [ten] specific situations in which both municipalities and their officers are immune from tort liability." (Internal quotation marks omitted.) *Elliott* v. *Waterbury*, 245 Conn. 385, 395, 715 A.2d 27 (1998); see also *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 59, 881 A.2d 194 (2005). Specifically, the relevant language in that section of the statute provides: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee . . . acting within the scope of his employment or official duties shall not be liable

for damages to person or property resulting from . . . (8) [the] failure to make an inspection or making an inadequate or negligent inspection of any property . . . to determine whether the property complies with or violates any law or contains a hazard to health and safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . .'' General Statutes § 52-557n (b) (8).

Our Supreme Court has concluded that § 52-557n (b) (8) ''abrogates the traditional common-law doctrine of municipal immunity, now codified by statute, in . . . *two* enumerated circumstances.'' (Emphasis added.) *Ugrin* v. *Cheshire*, supra, 307 Conn. 382; see also *Williams* v. *Housing Authority of Bridgeport*, 327 Conn. 338, 356, 174 A.3d 137 (2017) (§ 52-557n (b) (8) carves out two distinct exceptions to municipal immunity for failure to inspect); see generally *Collins* v. *Greenwich*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-16-6028449-S (February 13, 2018) (''[a]ctual notice of the hazardous condition and recklessness are distinct alternate predicates to liability under [§ 52-557n (b) (8)]'').

We now turn to the matter of apportionment.[11] Section 52-572h (c) provides in relevant part: ''In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . .'' Additionally, subsection (o) of § 52-572h provides in relevant part that ''*there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence,* including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action caused by a motor vehicle owned by the state pursuant to section 52-556.'' (Emphasis added.)

In *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 801, 756 A.2d 237 (2000), our Supreme Court stated that the our legislature made it ''clear that *the apportionment principles of § 52-572h do not apply where the purported apportionment complaint rests on any basis other than negligence and that these other bases include, without limitation,* intentional, *wanton or*

*reckless misconduct*, strict liability or liability pursuant to any cause of action created by statute." (Emphasis added; internal quotation marks omitted.) See also *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 726, 212 A.3d 646 (2019).

In light of the foregoing principles, the plaintiff's claims may be distilled as follows. In her revised complaint, the plaintiff alleged reckless conduct on the part of Kerr and Collins with respect to their failure to conduct an inspection of the aboveground pool to verify the installation of a pool alarm and a self-closing and self latching gate. Thus, relying on § 52-572h (o) and our Supreme Court's decision in *Allard* v. *Liberty Oil Equipment Co.*, supra, 253 Conn. 787, the plaintiff contends that the defendants were barred from pursuing apportionment actions against the Guerins and the Prinks under § 52-102b (a) and (c), respectively.

We now examine the two exceptions to municipal immunity in § 52-557n (b) (8) to address the plaintiff's contention. At the outset, we note that this task presents a question of law subject to plenary review. See, e.g., *DeMattio* v. *Plunkett*, 199 Conn. App. 693, 698,     A.3d     (2020). "When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., 698–99.

The second exception set forth in § 52-557n (b) (8) indisputably requires recklessness. Specifically, the text of the statute contains the phrase "a reckless disregard for health and safety under all the relevant circumstances . . . ." In *Williams* v. *Housing Authority of Bridgeport*, supra, 327 Conn. 358–74, our Supreme Court conducted a comprehensive analysis of how to assess recklessness in this context. Specifically, the court stated: "We concluded that, particularly when the failure to inspect violates some statute or regulation, the question of recklessness ordinarily will be one for the jury, taking into account all relevant circumstances. We also concluded that when the failure to inspect is not an isolated incident but results from a general policy of not conducting inspections of a certain type, the jury reasonably may consider whether the policy itself indicates a reckless disregard for public health or

safety." Id., 368–69.

As to the first exception contained in § 52-557n (b) (8), the relevant text abrogates municipal immunity in the case of a failure to inspect property or in the making of an inadequate or negligent inspection to determine if the property complied with or violated any law, or presented a hazard to health and safety when "*the political subdivision had notice of such a violation of law or such a hazard . . . .*" (Emphasis added.) General Statutes § 52-557n (b) (8). Stated succinctly, the first exception applies only when the municipality had notice of the violation of law or the hazard. Significantly, it does not contain any reference to recklessness. This exception is limited to instances of negligence with respect to the inspection of property for compliance with or violation of any law or the presence of a hazard to health and safety.

Having concluded that the first exception of § 52-557n (b) (8) contains a negligence, rather than a recklessness, standard, we now turn to the allegations contained in the plaintiff's revised complaint. If these allegations set forth a claim pertaining to the first exception of § 52-557n (b) (8) and negligent conduct, then § 52-572h (o) does not prevent apportionment at this stage of the proceedings.

"[T]he interpretation of pleadings is always a question of law for the court. . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Carrico* v. *Mill Rock Leasing, LLC*, 199 Conn. App. 252, 261,    A.3d    (2020); see also *Lynn* v. *Bosco*, 182 Conn. App. 200, 213–15, 189 A.3d 601 (2018); *Harborside Connecticut Limited Partnership* v. *Witte*, 170 Conn. App. 26, 34, 154 A.3d 1082 (2016).

In count one of her revised complaint, the plaintiff

alleged that at all relevant times, Kerr and Collins acted within the scope of their employment with the town. She also claimed that Kerr and Collins knew that all new pools required a pool alarm and a self-closing and self latching gate and that a permit cannot be issued without verification of these safety features. She further averred that these two town employees knew that these safety features were mandatory and vital to save the lives of children, who often reside at homes where new pools are constructed. The plaintiff then specifically alleged that (1) Kerr and Collins were aware that a pool had been constructed at 86 Gelbas Road, (2) they could see the pool from the public road that they drove on repeatedly, (3) they could see that a self-closing and self latching gate had not been installed, and (4) they never inspected or attempted to inspect the pool, or otherwise determined if a pool alarm or a self-closing and self latching gate had been installed. We construe the complaint broadly and realistically rather than narrowly and technically. *Morton* v. *Syriac*, 196 Conn. App. 183, 192, 229 A.3d 1129, cert. denied, 335 Conn. 915, 229 A.3d 1045 (2020). We conclude, therefore, that the plaintiff set forth a claim alleging that the town's employees, and thus the town, knew that a pool had been built at the property, had actual notice that the construction of this pool was completed in violation of the applicable laws and/or that the pool constituted a hazard to health or safety.

We therefore conclude that the plaintiff has alleged that Kerr and Collins, with actual knowledge of a violation of law and/or the existence of a hazardous condition, failed to conduct an inspection, in accordance with the first exception of § 52-577n (b) (8). Unlike the second exception of § 52-577n (b) (8), recklessness is not an element of the actual notice exception. As a result of the plaintiff's allegations of a claim of negligence on the part of the municipal actors, the defendants could seek apportionment as to the negligence of the Prinks and Guerins under § 52-572h (o). Accordingly, we conclude that the trial court erred in sustaining the plaintiff's objections to the notice of apportionment as to the Prinks and to the apportionment complaint filed against the Guerins.

The judgment is reversed and the case is remanded with direction to overrule the plaintiff's objections to the notice of apportionment and the apportionment complaint and for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In addition to the claims against the defendants brought in her capacity as administratrix of the decedent's estate, Malisa Costanzo, individually and as parent and next friend for her four children, Felicity Costanzo, Gabriel Costanzo, Xavier Costanzo and Giovanni Costanzo, also set forth claims of bystander emotional distress. See *Georges* v. *OB-GYN Services*, *P.C.*, Conn. , n.1, A.3d (2020) (noting general rule that minor

children may bring action only by way of parent or next friend). The claims of bystander emotional distress are not the subject of this appeal. In this appeal, we refer to Malisa Costanzo, in her capacity as administratrix of the estate of the decedent as the plaintiff. See id.

[2] General Statutes § 29-261 (b) provides: "The building official or assistant building official shall pass upon any question relative to the mode, manner of construction or materials to be used in the erection or alteration of buildings or structures, pursuant to applicable provisions of the State Building Code and in accordance with rules and regulations adopted by the Department of Administrative Services. They shall require compliance with the provisions of the State Building Code, of all rules lawfully adopted and promulgated thereunder and of laws relating to the construction, alteration, repair, removal, demolition and integral equipment and location, use, accessibility, occupancy and maintenance of buildings and structures, except as may be otherwise provided for."

[3] General Statutes § 29-265a provides: "(a) As used in this section, 'pool alarm' means a device which emits a sound of at least fifty decibels when a person or an object weighing fifteen pounds or more enters the water in a swimming pool.

"(b) No building permit shall be issued for the construction or substantial alteration of a swimming pool at a residence occupied by, or being built for, one or more families unless a pool alarm is installed with the swimming pool."

[4] See 2012 International Residential Code for One- and Two-Family Dwellings, Appendix G, § AG105.2 (8), p. 830 (adopted by the 2016 Connecticut State Building Code pursuant to General Statutes (Rev. to 2015) § 29-252, as amended by Public Acts 2016, No. 16-215, § 5) (aboveground swimming pools must have self-closing and self latching gate installed).

[5] The plaintiff's claim against the Prinks had resulted in a settlement and a release agreement.

[6] General Statutes § 52-102b (c) provides in relevant part: "If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last-known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action."

[7] General Statutes § 52-102b (a) provides: "A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h."

[8] The second exception set forth in General Statutes § 52-557n (b) (8) provides in relevant part that a municipality shall not be liable for damages for the "failure to make an inspection . . . unless such failure to inspect . . . constitutes a reckless disregard for health or safety under all the relevant circumstances."

[9] We note that the parties have not substantively addressed the court's orders "essentially" holding that it lacked subject matter jurisdiction. The defendants have appealed from the court's two orders sustaining the plaintiff's objections and the two orders dismissing the notice to seek apportionment and the apportionment complaint due to the lack of subject matter jurisdiction.

A determination regarding the subject matter jurisdiction of the trial court raises a question of law subject to the plenary standard of review. See *Tatoian* v. *Tyler*, 194 Conn. App. 1, 35, 220 A.3d 802 (2019), cert. denied,

334 Conn. 919, 222 A.3d 513 (2020); see also *Real Estate Mortgage Network, Inc.* v. *Squillante*, 184 Conn. App. 356, 360, 194 A.3d 1262, cert. denied, 330 Conn. 950, 197 A.3d 390 (2018). "Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . [S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . and a judgment rendered without subject matter jurisdiction is void." (Citation omitted; internal quotation marks omitted.) *Labissoniere* v. *Gaylord Hospital, Inc.*, 199 Conn. App. 265, 275–76,      A.3d      (2020); *Petrucelli* v. *Meriden*, 198 Conn. App. 838, 846,      A.3d      (2020).

We are not persuaded that these proceedings implicated the subject matter jurisdiction of the trial court. In any event, for the reasons set forth in this opinion, we conclude that the court erred, under these facts and circumstances, in rejecting the defendants' efforts regarding apportionment. Accordingly, we conclude that the court's determination regarding a lack of subject matter jurisdiction was improper.

[10] Although § 52-557n (a) (1) (A) imposes liability on municipalities for certain negligent acts or omissions of its employees, § 52-557n (a) (2) (A) provides that municipalities are not liable for acts that constitute criminal conduct, fraud, actual malice or wilful misconduct.

[11] "Apportionment does not affect the determination of whether the defendant is liable under a theory of negligence but, rather, affects the determination of his degree of fault once a trier of fact has determined that his breach of a reasonable standard of care was a substantial factor in causing the plaintiff's injuries. . . . Once it is determined that the defendant's conduct has been a cause of some damage suffered by the plaintiff, a further question may arise as to the portion of the total damages which may properly be assigned to the defendant, as distinguished from other causes." (Citation omitted; internal quotation marks omitted.) *Henriques* v. *Magnavice*, 59 Conn. App. 333, 338, 757 A.2d 627 (2000).