## CAROL COLLINS *v.* COLONIAL PENN INSURANCE COMPANY ET AL.
### (SC 16123)

Borden, Norcott, Katz, Palmer, Sullivan, Vertefeuille and Zarella, Js.*

---

* This appeal originally was heard by a panel consisting of Justices Borden, Norcott, Katz, Sullivan and Vertefeuille. Thereafter, this court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Justices Palmer and Zarella were added to the panel, and they have read the record, briefs and transcript of the original oral argument.

Argued October 31, 2000—officially released August 28, 2001

The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Jon Berk*, with whom was *Patty G. Swan*, for the appellants (defendant Raymond A. Sardinas et al.).

*Douglas P. Mahoney*, with whom was *Robert R. Sheldon*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. This case requires that we address the manner in which a trial court treats an uninsured motorist settlement in relation to a subsequent award of damages by a jury for a single indivisible injury by joint tortfeasors. The plaintiff, Carol Collins, was injured in a multicar accident, and brought an action against the defendants, Raymond A. Sardinas and Raymond D. Sardinas,[1] and her uninsured motorist carrier, the named defendant Colonial Penn Insurance Company (Colonial Penn), alleging negligence on the part of both the defendant and the unidentified driver of another vehicle.[2] After a settlement was reached with Colonial Penn, and a jury verdict subsequently was rendered against the defendant, the trial court, *Melville, J.*, denied the defendant's motions for remittitur, to set aside the verdict, and for collateral source reduction. The defendant appealed to the Appellate Court from the judgment of

[1] The plaintiff brought an action against Raymond D. Sardinas, the owner of the vehicle that struck her, and Raymond A. Sardinas, the operator of the vehicle at the time of the accident. The parties agreed during trial that any verdict rendered against Raymond A. Sardinas also would be rendered against Raymond D. Sardinas. Although both Raymond D. Sardinas and Raymond A. Sardinas appealed, this opinion, hereinafter, will refer to both individuals as the defendant.

[2] The count in the plaintiff's complaint against Colonial Penn was based solely on the alleged negligence of the unidentified driver. Colonial Penn's uninsured motorist coverage provided that it would pay to the plaintiff all damages suffered because of bodily injury for which she legally was entitled to recover from the unidentified motor vehicle operator up to the limits of her policy.

the trial court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We reverse the trial court's judgment.

The following facts are relevant to our disposition of this appeal. On November 14, 1994, the plaintiff sustained personal injuries and damage to her vehicle from a three car chain reaction collision. The accident arose as a result of an unidentified hit-and-run driver striking the defendant's vehicle, which in turn caused the defendant's vehicle to strike the plaintiff's vehicle in the rear while it was stopped at a traffic signal. Thereafter, the plaintiff brought this action against the defendant and Colonial Penn. The plaintiff's complaint alleged negligence on the part of both the defendant and the unidentified driver. Specifically, the plaintiff sought to recover damages from the defendant and Colonial Penn.[3]

Four days after the jury trial commenced, the plaintiff withdrew her action against Colonial Penn after settling for $95,000.[4] The trial proceeded against the defendant. After the close of evidence and the conclusion of a charge conference, but before closing arguments, the defendant submitted a memorandum of law asking the trial court to instruct the jury that negligence and damages should be apportioned between the defendant and Colonial Penn pursuant to General Statutes § 52-572h.[5]

[3] As a special defense, Colonial Penn claimed the limits of coverage under the policy and also claimed a right to set off any payments received by the plaintiff from collateral sources in addition to any payments made by Colonial Penn in connection with other coverage under the insurance policy in question. The defendant did not claim any special defenses at that time.

[4] The limit of the uninsured motorist coverage policy between Colonial Penn and the plaintiff was $100,000.

[5] General Statutes § 52-572h provides: "(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain

In addition, the defendant asked the court to submit a

and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose

## verdict form to the jury that would have allowed it to

negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsec-tion. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollect-ible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsec-tion (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of such party's proportionate share of the claim.

"(i) This section shall not limit or impair any right of subrogation arising from any other relationship.

"(j) This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of such indemnity obligation.

"(k) This section shall not apply to breaches of trust or of other fidu-ciary obligation.

"(*l*) The legal doctrines of last clear chance and assumption of risk in

apportion the percentage of negligence and damages found in the event of a plaintiff's verdict. After hearing argument on whether apportionment applied to uninsured motorist benefits, the trial court concluded that it would not charge the jury or submit jury interrogatories on the issue of apportionment because the claim would fail procedurally and substantively.[6] The court

actions to which this section is applicable are abolished.

"(m) The family car doctrine shall not be applied to impute contributory or comparative negligence pursuant to this section to the owner of any motor vehicle or motor boat.

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section.

"(o) Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556."

[6] The trial court noted that, although the defendant had submitted preliminary requests to charge the jury, as had all other parties in accordance with the court's pretrial orders, the defendant did not include a request to charge on the issue of apportionment. In addition, the trial court stated that prior to impaneling the jury, the court had informed all parties that any requests to charge that they reasonably could anticipate should be submitted at the close of the first day of evidence. Although the parties complied with that instruction, the defendant's requests did not include a request to charge on apportionment. Therefore, despite Colonial Penn's submission of a preliminary request to charge the jury on the issue of apportionment, that request *was not considered at the charge conference because the plaintiff had* withdrawn her claim against Colonial Penn and the defendant had never adopted that apportionment request. The court stated that, despite the fact that the defendant had not formally submitted a request to charge, the court would nevertheless consider the defendant's memorandum as a motion akin to one in limine because it appeared to be a part of the defendant's final argument. The trial court reasoned that, "[b]y addressing this issue before counsel addressed the jury, the court will avoid the prospect of having to

declined to permit this issue to be inserted into the case at that late date and further ordered counsel not to discuss the issue during closing arguments. Thereafter, the trial court charged the jury that, if it found the defendant liable for negligence, it was to award "fair, just and reasonable" damages. The jury returned a verdict for the plaintiff in the amount of $86,340.

The defendant then filed a motion for remittitur pursuant to General Statutes § 52-216a,[7] a motion to set aside the verdict pursuant to General Statutes §§ 52-228b,[8] 52-572h (f) and (n)[9] and the common law, and a motion for collateral source reduction pursuant to General Statutes § 52-225a.[10] The defendant claimed

embarrass counsel in front of the jury by correcting any erroneous statements made by them on this issue during their final arguments, as well as unnecessarily exposing the jury to any precluded issues." The court, thereafter, concluded that the defendant had failed both procedurally and substantively to sustain his claim that apportionment should occur.

[7] General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

[8] General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. . . ."

[9] See footnote 5 of this opinion for the text of § 52-572h.

[10] General Statutes § 52-225a (a) provides: "In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right

that, in order to prevent a double recovery, there should be a setoff reducing the jury award for the plaintiff by the amount of the settlement that the plaintiff had received from Colonial Penn, and, in the alternative, that the principles of apportionment should have been applied pursuant to § 52-572h. The trial court denied these motions, concluding that the principles of apportionment did not apply to uninsured motorist settlements. The trial court also concluded that the plaintiff had not received a double recovery and that, although the plaintiff may have come out better than she would have if there had not been an unidentified driver, equitable principles prevented the court from allowing the defendant, as a tortfeasor, rather than the plaintiff, from taking advantage of the settlement.[11] This appeal followed.

This appeal raises the following issues: (1) whether the trial court improperly afforded the plaintiff a double recovery when it refused to deduct from the jury verdict rendered against the defendant the amount recovered under the antecedent settlement with Colonial Penn; and (2) whether the trial court improperly refused to instruct the jury regarding the issue of apportionment. We conclude that the trial court improperly refused to instruct the jury regarding the issue of apportionment. Because our resolution of the apportionment issue disposes of the appeal, we decline to address the double recovery issue.

of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h."

[11] The trial court stated: "This lady won. Not only did she win to get her damages paid, but she got something to put in her pocket besides. . . . [She won] [o]n the theory that the defendant of the two tortfeasors, that is between the defendant . . . and the plaintiff . . . if anybody is to be hurt, then [the defendant] is to be hurt. That is the theory upon which she gets a windfall in this case. That is the theory, and that's why I put it in my brief, in my memorandum."

The defendant claims that the trial court improperly refused to instruct the jury on the issue of apportionment of liability between the defendant and the unidentified driver. Thus, a precise construction of the issue before this court is whether the trial court, pursuant to § 52-572h, should have instructed the jury to apportion liability between Colonial Penn, which previously had settled, and the remaining defendant, whom the jury found liable for damages. As correctly recognized by the trial court, this issue was not properly preserved.[12] *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996); see also Practice Book § 60-5.[13] The defendant's statutory claim, however, falls under the plain error doctrine.[14]

---

[12] The trial court stated, in its memorandum of decision: "As noted in the statement of the facts, this issue was first raised *informally* by the [defendant and Colonial Penn] at a late afternoon charge conference. At that time it was anticipated by all remaining parties that final arguments and the jury charge would be given the following morning. Up to this point the plaintiff had no forewarning that [the defendant] was going to demand apportionment between [the defendant and Colonial Penn]. It should also be noted that although Colonial Penn had submitted a preliminary request for an apportionment charge before it exited this case, [the defendant] neither joined in that request [n]or submitted its own request for such a charge. [The defendant] has yet to make a formal request for such a charge despite the fact that [his] attorney has filed a memorandum urging its use. Finally, had [the defendant] raised this issue in a timely fashion, the plaintiff would have had an opportunity to consider it in terms of its settlement strategy.

"Therefore, for the reasons and authority indicated, this court declines to permit the issue of apportionment to be inserted into this case at this late date." (Emphasis in original.)

[13] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[14] We previously have held that "[p]lain error review may be appropriate where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) *State* v. *Velasco*, 253 Conn. 210, 218–19 n.9, 751 A.2d 800 (2000). Also, we previously

"Because statutory interpretation is a question of law, our review is de novo." *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995). "Well settled principles of statutory interpretation govern our review. When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). We construe each sentence, clause or phrase to have a purpose behind it. *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162 (1992). In addition, we presume that the legislature intends sensible results

have recognized that plain error review is appropriate in matters involving statutory construction because "the interpretation of [a] statute and the resolution of [the] issue does not require further fact-finding . . . ." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 39, 699 A.2d 101 (1997); see also *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 38, 664 A.2d 719 (1995) (plain error doctrine invoked "where the record is complete and the question is essentially one of law, so that neither party is prejudiced"). Under those circumstances, the parties are not prejudiced by our review of the underlying claim. *State* v. *Velasco*, supra, 218–19 n.9.

We conclude that the plain error doctrine applies in this case. The record is complete and the issue before this court is strictly a "legal question that requires no finding of facts." (Internal quotation marks omitted.) Id.; see also *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993). "[B]oth parties have had an opportunity to present arguments regarding their proposed statutory interpretation in their appellate briefs." *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 38. Accordingly, neither party is prejudiced by our decision to invoke the plain error doctrine under the circumstances of this case. Furthermore, our invocation of plain error review serves the interests of justice between the parties, and the public welfare.

from the statutes it enacts. *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985). Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319, 702 A.2d 1180 (1997). . . . *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 583–84, 726 A.2d 502 (1999)." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 357–58, 757 A.2d 549 (2000).

We begin our analysis with a brief review of the evolution of tort law in this state regarding the apportionment of damages among multiple tortfeasors. Prior to October 1, 1986, this state followed the rules of joint and several liability with no contribution among joint tortfeasors. Stated briefly: "If the illegal conduct of each of the defendants was a proximate cause of the collision, they would be liable jointly and severally, the plaintiff would have a right to recover the entire amount of damages awarded from either, and, if he did so, the defendant paying them would have no right of contribution against the other; or the plaintiff might have sued either alone, and of course in the event of a recovery, that one would have been compelled to pay the entire amount of damages." (Internal quotation marks omitted.) *Donner* v. *Kearse*, 234 Conn. 660, 666, 662 A.2d 1269 (1995).

Under the common law of joint and several liability, therefore, even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages, so long as his negligence was a proximate cause of the plaintiff's injuries. "Thus, the plaintiff could collect the entire amount of his judgment from the richest defendant, or from the defendant with the deepest pocket." (Internal quotation marks omitted.) Id., 667.

In response largely to these concerns, the legislature undertook to reform the tort recovery provisions of our civil system, by enacting No. 86-338 of the 1986 Public Acts (Tort Reform I), which took effect October 1, 1986. Tort Reform I replaced the common-law rule of joint and several liability with a system of apportioned liability, holding each defendant liable for only his or her proportionate share of damages. Specifically, § 3 (f) of Tort Reform I provided that each defendant initially would be liable for only that percentage of his negligence that "proximately caused the injury, in relation to one hundred per cent, that is attributable to each person whose negligent actions were a proximate cause of the damages . . . ." Therefore, under Tort Reform I, the jury, in determining the percentage of negligence attributable to any defendant, could take into account the negligence of any other person, regardless of whether that person was a party to the action. "Tort Reform I, however, did not provide the plaintiff with a means of securing payment of damages unless that person was also a party." *Donner* v. *Kearse*, supra, 234 Conn. 667.

"Under Tort Reform I, to avoid the possibility that a jury would find that the negligence of a nonparty was a proximate cause of [the plaintiff's] injuries, [the] plaintiff was required to name as defendants all persons whose actions suggested even the slightest hint of negligence. The unwanted practical effect, therefore, was that plaintiffs were required to pursue claims of weak liability against third parties, thereby fostering marginal and costly litigation in our courts. . . .

"The legislature amended these tort recovery provisions just one year later when it enacted No. 87-227 of the 1987 Public Acts (Tort Reform II), the pertinent provisions of which now are codified in part under § 52-572h. These revisions, which took effect October 1, 1987, altered the class of individuals to whom the jury

could look in determining whose negligence had been a proximate cause of a plaintiff's injuries. In short, these revisions changed the focus of this class of negligent individuals from any person to any party and certain other identifiable persons. See General Statutes § 52-572h (c), (d), (f) [and] (n). Thus, while Tort Reform I provided that the jury, in determining the percentage of responsibility of a particular defendant, could also consider the entire universe of negligent persons, Tort Reform II limited this universe to only those individuals who were parties to the legal action or who were specifically identified in § 52-572h (n)." (Citation omitted; internal quotation marks omitted.) *Eskin* v. *Castiglia*, 253 Conn. 516, 525–26, 753 A.2d 927 (2000). Thus, the provisions set forth in § 52-572h establish two classes of persons whose negligence must be considered by the trier of fact: (1) the parties to the action; and (2) settled or released persons, as the term is defined in subsection (n).

Against this legislative landscape, we now consider whether, pursuant to § 52-572h, the jury in the present case should have been instructed to apportion liability between Colonial Penn, which previously had settled with the plaintiff, and the remaining defendant, whom the jury found liable for damages. The defendant argues that the jury should have been instructed to apportion liability between the defendant and the unidentified driver pursuant to § 52-572h. Specifically, the defendant relies upon subsection (n) of § 52-572h, which provides that, although the settled or released person is discharged from all liability for contribution, the total award of damages is to be "reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section." Furthermore, the defendant argues that Colonial Penn was acting as a surrogate for the unidentified driver because it was brought into the dispute solely

to litigate the unidentified driver's negligence. Therefore, the defendant argues, the trial court improperly refused to instruct the jury to apportion liability pursuant to § 52-572h (n). In response, the plaintiff contends that no apportionment is allowed in an uninsured motorist action for the conduct of an unidentified driver. Specifically, the plaintiff asserts that apportionment is available only in actions sounding in negligence, and that because her claim against Colonial Penn was a contract action, apportionment would have been improper. In support of her claim, the plaintiff relies on § 52-572h (o) for the proposition that there is no apportionment of liability or damages between parties liable for negligence and parties liable "on any basis other than negligence . . . ." Because the plaintiff's claim against Colonial Penn had its basis in contract, rather than negligence, the plaintiff argues, no apportionment was required. We agree with the defendant.

An uninsured motorist claim may be brought in a multitortfeasor context so long as one of the tortfeasors is uninsured, or if one of the putative tortfeasors is unidentified, or the insurance coverage of one of the tortfeasors has been exhausted. See *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 213, 603 A.2d 385 (1992). Traditionally, an action against an uninsured motorist carrier is one for insurance benefits and not for damages per se. *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 384–85, 698 A.2d 859 (1997); *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 817, 695 A.2d 1010 (1997). We previously have held, however, that in certain contexts, because of the "hybrid" nature of uninsured motorist coverage, the uninsured carrier operates in part as a "surrogate" for the financially irresponsible tortfeasor. *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 25, 26 nn.9 and 10, 699 A.2d 964 (1997).

In *Haynes*, we addressed the issue of whether payments made pursuant to an underinsured motorist policy should be treated as a common-law collateral source.[15] Id., 22–23. We held that underinsured motorist benefits were not collateral sources, and we recognized the long-standing principle that an injured party may recover just damages for the same loss only once. Id., 28–31. In *Haynes*, a panel of arbitrators had determined that the plaintiff's claim against the underinsured motorist carrier was worth $650,000. The plaintiff made a full recovery of $650,000, receiving $630,000 from the underinsured motorist carrier, and $20,000, which the plaintiff already had recovered from the tortfeasor driver. Id., 20–21. On appeal, this court invoked the principle of double recovery and declined to permit the plaintiff to recover additional damages from the hospital and physicians who also allegedly had committed negligence. Id., 27–30. We reiterated the principle that the plaintiff may not be compensated twice where full recovery already had been made. Id., 23–24.

Our holding in *Haynes* acknowledged that underinsured motorist payments are not purely contractual in nature because such payments "operate in part as a liability insurance surrogate for the underinsured motorist third party tortfeasor." Id., 25. We recognized that "underinsured motorist benefits are sui generis. They are contractual, but they depend on principles of tort liability and damages. Whether in any particular case underinsured motorist benefits should be treated as are other types of insurance must depend on a case-by-case analysis of the underlying purpose and the principles that apply to such benefits." Id., 24. With regard to uninsured motorist benefits, therefore, we noted that the issue was whether such proceeds should be treated

---

[15] In *Haynes*, we noted that "all references [therein] to 'underinsured' motorist coverage encompass[ed] uninsured motorist coverage as well." *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 21 n.4.

as a collateral source in each factual context. Id., 27. We concluded that, because the uninsured motorist carrier stepped into the shoes of, and acted as a surrogate for, the unidentified tortfeasor for purposes of characterizing payments under the uninsured motorist carrier, the relationship between the "underinsured motorist carrier and the defendant may be viewed as analogous to that of joint tortfeasors, and thus that the general tort rule precluding double recovery from joint tortfeasors should apply." Id.[16]

When examining § 52-572h, we must address not just whether a remand for apportionment is required, but how the plaintiff's settlement with Colonial Penn should be treated. In resolving the present dispute, it is important to understand the distinction between a jury award and a settlement. Unlike in *Haynes*, the plaintiff in the present case received a prior settlement award, not a prior arbitration award. Moreover, *Haynes* involved only common-law principles, rather than § 52-572h. Subsection (n) of § 52-572h provides that "the total award of damages is reduced by the amount of the *released person's percentage* of negligence determined in accordance with subsection (f) of this section." (Emphasis added.) The underlying rationale of subsection (n) is that, rather than a settlement reducing the amount of the jury or arbitration award dollar-for-dollar, as occurred in *Haynes*, the amount of the award

---

[16] Our holding in *Haynes* also was consistent with the dual purposes of underinsured benefits of providing compensation for the victims of underinsured motorists, while simultaneously adhering to the principle that uninsured motorist coverage is "to place the insured in the *same* position as, but *no better* position than, the insured would have been had the underinsured tortfeasor been fully insured." (Emphasis in original.) *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 27; see also *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 186, 713 A.2d 1269 (1998); *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 775, 621 A.2d 262 (1993); *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 18, 615 A.2d 1032 (1992); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 475, 370 A.2d 1011 (1976).

is reduced by the settling party's percentage of negligence. Thus, if a claimant settles with one potential tortfeasor, the plaintiff is allowed to keep the amount of that settlement, but the award against the remaining tortfeasor is reduced by the percentage of negligence attributable to the settling tortfeasor.

General Statutes § 52-225b[17] specifically provides that " '[c]ollateral sources' do not include amounts received by . . . settlement." We affirmed this principle in *Nash* v. *Yap*, 247 Conn. 638, 654, 726 A.2d 92 (1999). In *Nash*, although decided pursuant to Tort Reform I, rather than Tort Reform II, we noted that the statutory collateral source doctrine rested on the rule against double recovery, and that, "[u]nder Tort Reform I, but not under Tort Reform II, settlements are treated as deductible collateral sources." Id., 649. Therefore, under Tort Reform II, because settlements are not collateral sources, the jury's allocation of the settled person's percentage of liability measured against the total amount of the plaintiff's total damages, as stated in the jury award, determines whether the plaintiff will receive a windfall or a shortfall.[18] A plaintiff's settlement with one tortfeasor in a multitortfeasor context, however, does not necessarily represent a claimant's fair, just and reasonable damages but, rather, represents, in part, the parties' assessments of the risks of litigation. Once

---

[17] General Statutes § 52-225b provides: "For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement."

[18] In essence, the jury's ultimate assessment of liability and percentage of negligence for which each defendant is responsible determines whether the plaintiff made a "good" or "bad" settlement.

having undertaken to bargain regarding those risks, the plaintiff receives the benefit or burden of the settlement. Our interpretation in the present case reaffirms our recognition of the public policy of encouraging settlements of claims. *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 560–61, 737 A.2d 398 (1999) ("broad public policy considerations favor pretrial resolution of disputes between contracting parties"); *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 759, 687 A.2d 506 (1997) (recognizing legitimate public policy interest of encouraging pretrial settlement of claims). The plaintiff, therefore, is entitled to keep the proceeds of the settlement with Colonial Penn.

Having clarified that the plaintiff is entitled to retain the settlement proceeds, we now address whether the remaining defendant is required to pay the entire amount of the fair, just and reasonable damages assessed by the jury for the injury that occurred. Resolution of this issue requires a close examination of § 52-572h. The pertinent provisions of § 52-572h provide in relevant part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, *each party* against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable . . . damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the

total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury . . . *including settled or released persons under subsection (n) of this section.* Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . .

"(f) The jury or, if there is no jury, the court shall specify . . . the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to *each party* whose negligent actions were a proximate cause of the injury, death or damage to property *including settled or released persons* under subsection (n) of this section . . . .

"(n) . . . [T]he total award of damages is reduced by the amount of the *released person's percentage* of negligence determined in accordance with subsection (f) of this section.

"(o) Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including . . . an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556." (Emphasis added.)

We recognize that the damages sustained by a claimant may be caused by the negligence of more than one tortfeasor under § 52-572h. Also, it is important to note that the purpose of § 52-572h was to change the com-

mon law of joint and several liability such that a defendant would be liable only for that portion of the damages for which he was responsible.[19] In order to be consistent with both the language and the underlying policy of § 52-572h, this is a case where we acknowledge, as we did in *Haynes*, the sui generis nature of uninsured motorist benefits. Colonial Penn acted, in part, as a surrogate for the third party tortfeasor as well as a party against whom the plaintiff maintained a first party contract claim. See *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 26–31. In the present case, Colonial Penn was not only a named, identifiable party in the original complaint, but its function in this case was to litigate the blameworthiness of the unidentified hit-and-run driver. That is, its liability in the uninsured motorist contract was predicated on the negligence of the phantom driver. Id., 24–25.

The plaintiff, in her complaint, linked the cause of her damages not only to the negligence of the defendant, but also to the negligence of the unidentified driver when it named Colonial Penn as a defendant. Specifically, the plaintiff's complaint against Colonial Penn alleged that: "The injuries and damages suffered by the plaintiff were the result of the negligence and carelessness of the unidentified motor vehicle operator in that the unidentified operator failed to keep a proper lookout; the unidentified operator failed to properly brake his/her vehicle or take other evasive actions, so as to avoid a collision; in that he/she failed to keep his/her vehicle under proper control . . . ." As to the defendant, the complaint stated: "In addition to the

---

[19] Specifically, § 52-572h (c) provides in relevant part: "In a negligence action to recover damages resulting from personal injury, [or] wrongful death . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section."

negligence and carelessness of the unidentified motor vehicle operator, the injuries and damages sustained by the plaintiff were the result of the negligence and carelessness of the defendant . . . ." It is clear that, not only was the cause of action against Colonial Penn based on the negligence of the unidentified driver, but that the plaintiff affirmatively alleged that the unidentified driver and the defendant caused her injuries.

During trial, Colonial Penn, acting as a surrogate for the unidentified tortfeasor, settled its claim with the plaintiff for $95,000. Thereafter, the jury assessed the plaintiff's fair, just and reasonable damages in the amount of $86,340. Because the jury was not instructed to allocate the unidentified driver's percentage of negligence, pursuant to § 52-572h (n), however, we do not know the percentage of liability that the remaining defendant is responsible for and what percentage of negligence can be attributed to the unidentified driver.[20] To require the defendant to pay the entire amount of damages assessed by the jury in this multitortfeasor situation without apportionment taking place essentially would be a reversion to the common law of joint and several liability, which was abolished by Tort Reform I and Tort Reform II, and in particular, by § 52-572h.[21]

---

[20] Thus, if on remand the jury determines that the fair, just and reasonable damages is $86,340, and that the defendant was 100 percent responsible and the unidentified driver was 0 percent responsible, then the defendant would be responsible to pay the entire amount of the jury award. The plaintiff also would keep her previous settlement of $95,000. If, however, the jury determines that the defendant was 25 percent responsible and the unidentified party was 75 percent responsible, then the defendant would be permitted to reduce the award by 75 percent and pay only $21,585. Under either scenario, the plaintiff makes a full recovery of her fair, just and reasonable damages.

[21] Our decision in the present case is not inconsistent with our decision in *Eskin* v. *Castiglia*, supra, 253 Conn. 516. In *Eskin*, the defendant sought to file an apportionment complaint, pursuant to General Statutes § 52-102b, against an unidentified hit-and-run driver, under a John Doe name. Id., 520–21. We held that the defendant could not file such a complaint for two reasons. First, under § 52-102b, we recognized that there has to be an

Our conclusion is also consistent with subsection (f) of § 52-572h. Subsection (f) (4) of § 52-572h provides that the jury is required to specify the percentage of negligence that is "attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property *including settled or released persons under subsection (n) of this section* . . . ." (Emphasis added.) In this case, the jury was not given an opportunity to allocate liability regarding the defendant or the settled party's percentage of negligence. Although the plaintiff relies on *Nash* v. *Yap*, supra, 247 Conn. 642, for the proposition that the defendant is required to pay the jury determination of damages and that the plaintiff also retains any prior settlements, the proposition overlooks that in *Nash*, unlike in the present case, the jury had allocated the percentage of negligence of three tortfeasors.

Moreover, the plaintiff's reliance on § 52-572h (o), as amended by No. 99-96 of the 1999 Public Acts, which provides that "there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence," for the proposition that apportionment is not required because her claim against Colonial Penn was based on contract, not negligence, is misplaced. The plaintiff's

---

identifiable person upon whom to serve a complaint. Id., 523–24. Second, we recognized that allowing such a complaint would be contrary to the policy underlying § 52-572h that limits " 'the universe of negligence' " to be considered to identifiable persons. Id., 527. Despite the fact that, in the present case, the unidentified tortfeasor, for whose conduct the plaintiff's uninsured motorist carrier settled, was also a hit-and-run driver, *Eskin* does not control our decision herein. Because Colonial Penn already was in the case as an original codefendant, the obstacle of § 52-102b is not present. Thus, "the universe of negligence" in this case includes the negligence of the unidentified driver because Colonial Penn is acting, in part, as a surrogate. Significantly, we also note that an injured plaintiff may recover money from an uninsured motorist carrier who serves as a surrogate for the unidentified person, unlike where a plaintiff merely had brought an action against an unidentified person as in *Eskin*.

argument ignores the nature of the complaint filed as described in the preceding paragraphs. The uninsured motorist statutes and regulations incorporate the negligence law of liability and damages involving claims where joint tortfeasors are present. The uninsured motorist statute, General Statutes § 38a-336 (a) (1),[22] mandates uninsured motorist protection "of persons insured thereunder who are *legally entitled to recover damages* . . . ." (Emphasis added.) Without proof of the negligence of a tortfeasor and without proof of damages from such negligence or an inference of negligence and damages that prompts the uninsured motorist carrier to settle, there can never be a recovery of uninsured motorist benefits.[23] Moreover, this principle is reiterated in § 38a-334-6 (a) of the Regulations of Connecticut State Agencies,[24] which provides that the

[22] General Statutes § 38a-336 (a) (1) provides in relevant part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ."

[23] Further evidence of the link between the tort law and uninsured motorist benefits is seen regarding the scheme for conversion coverage. General Statutes § 38a-336a (c) provides, as an option, underinsured motorist conversion coverage in lieu of the underinsured motorist coverage as mandated by § 38a-336. Section 38a-336a (e), the statute providing conversion coverage, modifies the definition of " 'underinsured motor vehicle' " by stating that "a motor vehicle with respect to which the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the *fair, just and reasonable damages of the covered person.*" (Emphasis added.)

[24] Section 38a-334-6 of the Regulations of Connecticut State Agencies provides in relevant part: "Minimum provisions for protection against uninsured or underinsured motorists

"(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury . . . ."

uninsured carrier is required to pay all sums that the insured is "legally entitled to recover as damages" from the uninsured tortfeasor. "Where, as here, more than one [provision] is involved, we presume that the legislature intended them to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Stern* v. *Allied Van Lines, Inc.*, 246 Conn. 170, 179, 717 A.2d 195 (1998). We conclude that the legislature, in enacting §§ 52-572h and 38a-336, did not intend to create a separate law of damages for uninsured motorist claims different from that which exists for traditional negligence awards. An insured, therefore, is "legally entitled to recover as damages" under § 38a-334-6 (a), her damages after they properly are apportioned pursuant to the dictates of § 52-572h.[25]

In this case, recognizing the hybrid nature of uninsured motorist coverage with regard to the facts of this case allows for the principles guiding Tort Reform II to be applied equitably. For example, if the plaintiff had filed claims against two tortfeasors and subsequently released or settled with one, the remaining defendant would still be allowed the opportunity, pursuant to General Statutes §§ 52-102b and 52-572h, to have the jury apportion the percentage of negligence of each tortfeasor. Also, if the other driver had been underinsured

---

[25] We reject, therefore, the contention of the dissent that our reasoning in *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 756 A.2d 237 (2000), compels a different result in the present case. Our conclusion in *Allard* that § 52-572h (o) does not permit apportionment between a negligent defendant and a defendant liable in product liability; id., 803–804; is not inconsistent with the notion that there nonetheless may be apportionment between a negligent defendant and an uninsured motorist carrier that, for purposes of such apportionment, acts as a surrogate for the negligent uninsured tortfeasor. As we have explained, the fact that the plaintiff's action against her uninsured motorist carrier was based on her contract with that carrier does not preclude the concomitant fact that the legal basis of that contract claim required her to establish the negligence of that uninsured tortfeasor.

instead of a hit-and-run driver, and had settled with the plaintiff, § 52-572h (n) would have been triggered and apportionment principles would have been submitted to the jury. Moreover, if one tortfeasor was uninsured *and identified*, and the injured party did not have uninsured motorist protection, this "financially irresponsible [driver]" could still be brought into the litigation for apportionment purposes and the plaintiff's recovery from the solvent tortfeasor potentially could be diminished. Lastly, if the unidentified motorist had been identified in this case and his liability carrier paid money to the plaintiff on behalf of the tortfeasor, there would be no question that apportionment should apply.

Our conclusion in the present case should not be interpreted as recognizing no legal distinction between an uninsured motorist carrier and the unidentified tortfeasor. *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 25 (uninsured motorist carrier and third party tortfeasor "do not share a *complete* legal identity" [emphasis in original]); *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 817 (for purposes of collateral estoppel, uninsured motorist carriers are not "the alter ego of the tortfeasor" and "do not share the same legal [status]"). In the present case, however, it would be inequitable and contrary to the spirit underlying § 52-572h, to allow a plaintiff who does have uninsured motorist coverage and has collected an amount pursuant to a settlement in a automobile accident involving multiple tortfeasors, to deny application of the principles of Tort Reform II, namely, that each individual tortfeasor pay its fair share or portion of damages sustained. This is especially significant because Colonial Penn was brought into the litigation *solely* to litigate the blameworthiness of the unidentified driver. We conclude that in this case there should be no substantive difference for apportionment purposes merely because the other tortfeasor is unidentified, so long as the under-

insured carrier is named in the complaint to act as the unidentified driver's surrogate. Therefore, given the statutory scheme underlying this case, the nature of the complaint, and the cause of the accident, we conclude that the surrogate analysis can be extended to apportionment principles and that our decision is consistent with Tort Reform II and §§ 52-572h and 52-225b. We conclude that the trial court improperly refused to instruct the jury regarding the issue of apportionment. The plaintiff is entitled to retain the settlement proceeds, but the case must be remanded so that the jury may assess the percentage of negligence and portion of liability for which the remaining defendant is responsible.

The judgment is reversed and the case is remanded for a new trial.

In this opinion BORDEN, KATZ, PALMER and ZARELLA, Js., concurred.

VERTEFEUILLE, J., with whom SULLIVAN, J., joins, dissenting. I respectfully disagree with the majority's conclusion that liability must be apportioned between the negligent defendants, Raymond A. Sardinis and Raymond D. Sardinis (defendants), and the defendant Colonial Penn Insurance Company (Colonial Penn), the plaintiff's uninsured motorist insurance carrier, pursuant to General Statutes § 52-572h. I would conclude that § 52-572h (o) bars apportionment between a party liable for negligence and an uninsured motorist insurance carrier, whose liability arises under the contractual provisions of an insurance policy. That statute provides: "Except as provided in subsection (b) of this section, *there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence* including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action

created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for injuries caused by a motor vehicle owned by the state pursuant to section 52-556." (Emphasis added.) General Statutes § 52-572h (o).

Less than one year ago, in a case raising a similar issue, we interpreted § 52-572h (o) and unanimously concluded that it does not permit apportionment between a negligent defendant and a defendant liable on a product liability theory. *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 798–99, 756 A.2d 237 (2000). We recognized therein that "[t]he general effect of [§ 52-572h (o)] was to make clear that the apportionment principles of § 52-572h do not apply where the purported apportionment complaint rests on any basis other than negligence . . . ."[1] (Internal quotation marks omitted.) Id., 801.

Our decision in *Allard* offers important background for my analysis of the present case. The defendant in that case, Liberty Oil Equipment Company (Liberty Oil), which was allegedly liable in negligence, sought to apportion liability to a product seller. Id., 789. In its apportionment complaint, Liberty Oil alleged only a theory of negligence against the product seller. Id., 790. We concluded, however, that "Liberty Oil cannot . . . convert its apportionment claim against [the product seller] into something other than a product liability claim simply by alleging only negligent misconduct." Id., 800. The question before us, therefore, was whether

[1] Although *Allard* involved a defendant that was impleaded as an apportionment defendant and in the present case, Colonial Penn was an original defendant in the action brought by the plaintiff, the principles governing the apportionment issue in both cases are the same as both cases involve a claim for apportionment based on § 52-572h.

§ 52-572h, as amended by No. 99-69, § 1 (o), of the 1999 Public Acts (P.A. 99-69), allows for the apportionment of liability to a defendant on a product liability claim. Id., 798.

We began with a careful examination of the legislative history of P.A. 99-69 and concluded that "[t]he legislative history of P.A. 99-69 makes clear that its principal purpose was to overrule legislatively a portion of this court's decision in *Bhinder* v. *Sun Co.*, 246 Conn. 223, 717 A.2d 202 (1998). See, e.g., 42 S. Proc., Pt. 6, 1999 Sess., pp. 1797–98, remarks of Senator Donald E. Williams, Jr.; 42 H.R. Proc., Pt. 6, 1999 Sess., p. 1916, remarks of Representative Michael P. Lawlor; id., pp. 1918–19; see also generally Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1999 Sess., pp. 1271–74, 1310–29, 1340–46, 1355–58, 1362, 1365, 1418–20, 1426–31; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1999 Sess., pp. 1538–50." *Allard* v. *Liberty Oil Equipment Co.*, supra, 253 Conn. 801–802. We further explained that in *Bhinder* v. *Sun Co.*, supra, 225, "[t]his court held that: (1) as a matter of statutory interpretation, 'the plain language of § 52-572h provides that only negligent persons may be cited in by the defendant for apportionment of liability purposes'; id., 230; and (2) nonetheless, 'as a matter of common law, we should extend the policy of apportionment to permit a defendant in a negligence action to cite in as an apportionment defendant a party whose conduct is alleged to be reckless, wilful, and wanton.' Id., 234." *Allard* v. *Liberty Oil Equipment Co.*, supra, 803.

On the basis of that examination of the legislative history of P.A. 99-69, we determined that the three purposes of P.A. 99-69 were as follows: "First, the legislature reaffirmed that, as a matter of statutory interpretation, only negligent persons may be cited in as apportionment defendants pursuant to the statute. . . . Second, the legislature made clear its intent that

apportionment principles would not apply where the basis of liability of the purported apportionment defendant was based on conduct 'other than negligence,' including but not limited to intentional, wanton or reckless misconduct, strict liability, and liability pursuant to any cause of action created by statute. . . . Third, the legislature made clear its intent that, despite the specific bar to apportionment regarding statutory actions, liability *may* be apportioned among parties liable for negligence in statutory actions based on *negligence*, such as wrongful death actions and actions for injuries caused by state-owned motor vehicles." (Emphasis in original.) Id., 803–804. We concluded, therefore, that "the apportionment principles of § 52-572h do not apply where the purported apportionment complaint rests on any basis other than negligence . . . ." (Internal quotation marks omitted.) Id., 801. We further concluded that "it would be inconsistent with the provisions of § 52-572h, as amended by P.A. 99-69, § 1 (o), to permit a defendant sued in negligence to claim apportionment against a product seller whose alleged misconduct tracks that of product liability . . . ." Id., 804.

I believe that our reasoning in *Allard* should guide our analysis in the present case. The plaintiff's claim against Colonial Penn is a common-law contract claim based on the contract of insurance between Colonial Penn and the plaintiff. In the complaint, the plaintiff alleged that "[a]t the time of [the collision, the plaintiff] had an automobile policy with [Colonial Penn] providing for $100,000 in uninsured motorist coverage. [Colonial Penn] provided that [it] would pay to the plaintiff all damages suffered because of bodily injury to which she is legally entitled to recover from the unidentified motor vehicle operator up to the limits of the [Colonial Penn] policy applicable to this accident. Under the contract of insurance described above, the plaintiff has

demanded that [Colonial Penn] pay to the plaintiff $100,000 but [Colonial Penn] has refused and neglected to pay the same." The majority concludes, however, that the jury should have apportioned liability between the defendants and Colonial Penn under § 52-572h (o) because the claim against Colonial Penn is based on negligence in that Colonial Penn acts as a surrogate for the negligent unidentified tortfeasor in this case. I disagree.

The majority concludes that the action in the present case is based on negligence because "Colonial Penn acted, in part, as a surrogate for the third party tortfeasor . . . ." The majority requires apportionment as to Colonial Penn based on the reasoning that the "plaintiff . . . linked the cause of her damages not only to the negligence of the defendant[s], but also to the negligence of the unidentified driver when it named Colonial Penn as a defendant." This reasoning is similar to that which we rejected in *Allard* v. *Liberty Oil Equipment Co.*, supra, 253 Conn. 787.

In *Allard*, Liberty Oil argued that it was appropriate to apportion liability to the product seller "[g]iven that the . . . apportionment claim alleges negligence in relation to a defective product . . . ." (Internal quotation marks omitted.) Id., 805. In rejecting Liberty Oil's argument that its product liability claim was essentially one based on negligence, we concluded that "[t]he theory behind the statutory limitation of apportionment claims to those involving negligence is that, in such a case, both the underlying claim of the plaintiff and the apportionment claim of the defendant are in relative pari materia, in that they both involve negligent conduct. The statutory actions based on negligence given as examples are consistent with that theory because they rest on the same notions of fault embodied in nonstatutory negligence actions. Product liability

claims, however, do not rest on notions of fault." Id., 805–806.

Similarly, a claim for uninsured motorist insurance benefits does not rest on the fault of the insurance carrier, but arises out of the insurance contract with the carrier. Although Colonial Penn's liability is "premised in part on the contingency of the tortfeasor's liability"; *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 817, 695 A.2d 1010 (1997); the action by the plaintiff against Colonial Penn is not based on any allegations of fault by Colonial Penn. As we recognized in *Allard* v. *Liberty Oil Equipment Co.*, supra, 253 Conn. 803–804, the legislature clearly intended that liability be apportioned only on the basis of negligence, whether in an action arising under the common law or statute. The claim against Colonial Penn in this case is based on its insurance contract with the plaintiff and not on any negligence by Colonial Penn. The terms of § 52-572h (o) therefore expressly prohibit apportionment to Colonial Penn.

I further find that the reliance on *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 699 A.2d 964 (1997), by the majority for its surrogacy reasoning is misplaced. Citing *Haynes*, the majority concludes that "because of the 'hybrid' nature of uninsured motorist coverage, the uninsured carrier operates in part as a 'surrogate' for the financially irresponsible tortfeasor." Although we acknowledged in *Haynes* that an uninsured motorist carrier can be seen as a surrogate for the tortfeasor, *Haynes* is not applicable to this case for two reasons. First, *Haynes* was based on common-law principles and not on § 52-572h, the statute that is directly at issue in the present case. Second, *Haynes* was decided in 1997, two years before § 52-572h was amended by adding subsection (o), which explicitly prohibits apportionment between parties liable in negligence and parties liable on any other basis. The reasoning in *Haynes* therefore has been superseded by the legislature's adop-

tion of § 52-572h (o) and should not be applied to reach a result contrary to the explicit provisions of § 52-572h (o).

"In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . [W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Board of Education* v. *New Haven,* 237 Conn. 169, 180, 676 A.2d 375 (1996). Also, "[i]t is a well-recognized rule of statutory construction that the legislature is presumed to know all the existing statutes, the judicial interpretation of them, and the effect that its action or nonaction will have on them." *Mack* v. *Saars,* 150 Conn. 290, 298, 188 A.2d 863 (1963). "And it is always presumed to have intended that effect which its action or non-action produces." (Internal quotation marks omitted.) *Civardi* v. *Norwich,* 231 Conn. 287, 298, 649 A.2d 523 (1994).

In adopting subsection (o) of § 52-572h, the legislature could not have spoken more clearly: apportionment to a party liable on a basis other than negligence is expressly prohibited. Because the plaintiff's claim against Colonial Penn arises under a contract of insurance, I respectfully disagree with the majority's conclusion that § 52-572h requires apportionment of liability to Colonial Penn in this case.